TtxrNey, J.,
delivered the opinion of the Court.
The judgment of the Circuit Court is erroneous. The plaintiff in error was Tax Collector for Smith County,for the years 1866 and 1867. At the November Term, 1868, of the Circuit Court for that county, he was indicted for failing and refusing to pay into the Treasury of the State the taxes collected by him. The indictment is based upon Section 3, chapter 131, of the Act of Assembly passed March 10th, 1860, which is in these words:
“Be it further enacted, That if any Tax Collector shall hereafter wilfully fail and refuse to .pay into the Treasury of the State the revenue which he has collected, he shall *75 be guilty of a felony; and it shall be the duty of the Attorney General of the district in which such defaulting revenue collector may reside, to prosecute him for such offense, and upon conviction thereof, he shall be imprisoned in the State Penitentiary for a period of not less than five nor more • than twenty years.”
At the March Term, i860, plaintiff in error was tried, convicted and sentenced to the Penitentiary for a term of five years; from which finding and sentence he appealed to this Court.
It is objected, first, that the indictment was not preferred and found in the proper county; that the offense, if any, was one of omission, committed in Davidson county, where the Treasurer is required by law to keep his office and transact the business thereof; and that the Circuit Court of Smith had no jurisdiction. We do not concur in this view. 1st, Because the act making the default a felony makes it the duty of the Attorney General of the district in which the defaulting collector, resides, to prosecute him for the offense, and it could not have been the intention of the Legislature to give exclusive jurisdiction in such cases to the courts of one county, and require the various District Attorneys General of the State to go to that county to prosecute, disregarding the interests of the State in other criminal prosecutions in the entire balance of the State.
2nd. The offense is one of the will, its commission to be ascertained from the passive action of the accused, in not going with or sending the revenue by him collected in- a reasonable time to the Capitol to be paid into the Treasury.
*76 It is farther objected by plaintiff in error, that the Circuit Judge erred in overruling his objection to challenges made by the Attorney General to the competency of fifteen jurors, otherwise competent, than that they “had not certificates to vote under the Franchise Acts of the Legislature of this State.”
This exception to the ruling of the Court was well taken. The action of the Court was founded upon Section 1, ch. 5, of the Act of 26th November, 1866, as follows: “Be it enacted by the General Assembly of the State of Tennessee, That in all trials of civil or criminal cases in any of the courts of this State, it shall be good ground of challenge for cause as to competency of any juror, that such juror is not a qualified voter of this State.”
This legislation was had with reference to that of June, 1865, and May 3rd, 1866, and is a precedent qualification of that of 25th February, 1867, inappropriately denominated the “Franchise Laws.”
The Act of November, 1866, entitled “An Act to define the qualification of Jurors, is unconstitutional and void.
“That the right of trial by jury shall remain inviolate,” is a positive and inalienable, as well as constitutional,' guaranty to every citizen of the State.
The Constitution secures to the accused, in prosecutions by indictment or presentment, a speedy publio trial, by an impartial jury of the county or district in which the crime shall have been committed.
Under this statute do these fundamental principles obtain. No dispassionate and just mind can for a *77 moment think so. Reading it in the light of the Acts to which it has reference, and of which it is in fact a part, it is plain it was the offspring of wild political passions, intended to build up one political party and tear down another, and to destroy that equilibrium which paralyzes fanaticism and begets conservative justice.
It can not be “an impartial jury” selected and qualified alone because of its political opinions, produced in times of high excitement resulting from a bloody civil war, in which the State was distinctively divided against itself. The political adversary of such a jury stands a poor chance for a just administration of law. If a Legislature may restrict the qualification to a political test, it may to a religious one, and declare that none save members of a particular denomination shall be competent; it may restrict it to the farmer, the mechanic, the merchant, or to any other one class of the callings in life, and further refine and classify that class.
By the statute under review, the constitutional provision, “That the right of trial by jury shall remain inviolate,” is abrogated, and the guaranty' of trial by an impartial jury, is expunged from the. “Declaration of Rights.”
Reverse the judgment aiid remand the cause for á new trial.